Howell *v.* Robertson.  State *v.* Kirby.

THE STATE *against* STEPHEN KIRBY.

ON CERTIORARI.

Where a justice of the peace issues an execution or tax warrant for fines imposed by a military court upon persons neglecting militia duty, without having any list of delinquents returned to him by the officer whose duty it was to make such return, the execution or tax warrant will be set aside.

This was a *certiorari* to bring up to this court the proceedings on a return of delinquents, or persons liable to fines for neglect of military duty.  The justice made a return to this *certiorari* in the following words: "I do herewith send to the justices of the Supreme Court of judicature the tax warrant by me issued, as within I am commanded.  And I do further certify, that I put my name to the said tax warrant without seeing or having delivered to me any return list of delinquents, nor does any such list remain with me, nor have I any record or proceeding whereby I can make any more full return."

* See 1 *Pen. Rep.* 266, contra.

Upon the return of the *certiorari*, a rule was obtained, on the part of the prosecutors, to take affidavits; and by these affidavits it appeared, that the tax warrant was issued by the justice without the list of delinquents having been returned to him by the officer "whose duty it was to make such return, and without any certificate of the fines having been imposed on the delinquents by any competent tribunal, and a variety of other facts tending to prove the reasons relied upon by the prosecutors to quash the proceedings of the justice; but as the court did not found their opinion upon them, it is deemed unnecessary to detail them. The reasons assigned for setting aside the execution, or tax warrant issued by the justice, were—1. Because the justice had not delivered to him, by the proper officer, a return list of delinquents, or persons subject to fines for neglect of military duty. 2. Because the justice issued this execution against many persons named in the schedule to the said execution annexed, who had never been subject to fines for neglect of military duty. 3. Because the writ of execution is not directed to any constable by name. 4. Because the said writ of execution is not directed to one of the constables residing within the bounds of the battalion in which the said delinquents are said to belong.

*White* now moved to set aside the proceedings for reasons above assigned, and read the 8th, 10th and 11th sections of the militia act of 1815, and, also, a number of affidavits, to prove the facts upon which the above reasons were founded, together with the return of the justice to the *certiorari*. He also read the 61st section of the militia act, and contended, that in order to make a man liable under this act to a militia fine, it was necessary that he should not be taxed by the assessor as an exempt. It was the duty of the captain to deliver to the assessor a list of all those persons who are liable to do military duty. The captain neglected to do this, and the assessor, not receiving any list from him, taxed

each of these delinquents the sum of six dollars, and, therefore, they could not be fined by the militia court, otherwise they would be compelled to pay twice. The court martial can levy no fine, and has no jurisdiction over a person who is exempt from military duty. 3 *Cranch* 331–7.

To sustain these proceedings, the persons who are made liable to fines, the persons against whom the warrant issues, should have notice. See 7 *John.* 97. Here the justice issues the warrant; he makes no record of it. The paymaster may, the next day, hand the list to another justice. There is no record made by which the person fined can prove that he has paid the money; nor does it appear that there was any affidavit of the sergeant, that the men were absent, or that the list was presented to the justice.

*Ewing*, contra, contended—1. That there was evidence to shew that the battalion paymaster delivered the return list of delinquents to the justice, and that it was in his possession at the time he signed the warrant. 2. All men who are enrolled are liable to do military duty, and if they fail to attend they are liable to be fined. The liability of these men depended upon their being of age and not exempted by the act, and did not depend upon the captain's making a return; for, if the captain fails to make return, they are not absolved from militia duty. They must be actually placed upon the assessor's tax list, and pay the tax before they are absolved from militia duty. The gentleman should, therefore, go farther, and shew that they had really been put upon the assessor's duplicate. Those upon the duplicate are exempt, and those only. He does not, therefore, shew enough. Archimedes could have raised the world if he could have found the place to stand on; and the argument of the gentleman would be good enough if he had any foundation to support it. Until he shews that these men have been put upon the duplicate, and made exempts according to the terms of this act, he shews nothing to relieve them from

this warrant.    3. As to the objection, that no notice was given by the sergeant to the delinquents, the provision as to this is contained in the 8th section.    And the sergeant must make oath before the company court, that the notice has been given.    The first answer is, that the present application is to quash the warrant.    We are not to go back to look into these antecedent matters.    It might be, that if these individuals had not been notified that they might have a remedy against the officers omitting their duty.    But it would not be sufficient to quash the proceedings of the justice, for if he issues the warrant upon the exhibition of such matter as the law requires, that is sufficient.    Another answer is, that the decision of the company court, being a court of competent jurisdiction, is, in this respect, final; if they intended to get rid of their fines they should have directed the *certiorari* to the company court itself.    4. As to the objection, of the constable's not residing within the bounds of battalion, he does not shew that the constable to whom it was directed lived out of the bounds of the battalion, and, therefore, until he shew that, he can take no objection.    It is not necessary that it should be directed to a constable by name.

Mr. *L. H. Stockton,* who was concerned with *White,* cited (for the counsel opposed) the following cases, to shew that certain things should have appeared on the proceedings. *Cowp.* 26 ; 7 *Term Rep.* 364; 4 *Bur.* 2245.

*Ewing* replied to these cases, that the form of the action was prescribed in the act of assembly, and, therefore, they did not apply.

*Wall,* on the same side, said, he would submit the case on the argument of his colleague, Mr. *Ewing.*

*L. H. Stockton,* in reply, said, the proceedings in this case being contrary to the common law, the construction of them must be strict, not liberal.    His principles are found in the cases cited.    *Cowp.* 26 ; 7 *Term Rep.* 364 ; 4 *Bur.* 2245.

State *v.* Kirby.

1. There was a total want of jurisdiction in any military court against the prosecutors of this writ. The 61st section was the one upon which he relied to shew that these proceedings were all *coram non judice.* All persons who are not delivered by the captain to the assessors, as enrolled by him, and doing military duty, are, by the effect of the statute, exempt, and to be so considered. Now no such enrolment was made as to the prosecutors of this *certiorari.* It follows, as an irresistible corrollary, that if the persons are not enrolled then they cannot be proceeded against by the military court or officers.

If these military officers had delivered this sworn roll, all those not included in the list of those doing military duty would be exempt, and liable to pay six dollars to the treasurer. The intention of the act was, that those men who were conscientiously scrupulous of bearing arms might be excused by paying a commutation, and not to enlist the pious quaker or methodist alongside of the whiskered warrior. If we can shew the court that the warrant issued by the justice is void they cannot say, that there are other proceedings preparatory to those which we have not brought up.

2. To legalize such a warrant as has been issued, the act requires that the justice should have a list of delinquents exhibited to him, and without this fundamental and incipient document the warrant and proceedings thereon is void. He read the 12th section of the militia act. This document should not only exist, but should be preserved, and should have been brought up to support this warrant.

KIRKPATRICK C. J. This is a *certiorari* directed to Stephen Kirby, Esq., one of the justices of the peace of the county of Gloucester, commanding him to send up his proceedings touching a certain warrant issued by him on the 13th of January, 1818, for the levying and collecting of certain fines adjudged against certain persons belonging to the second battalion of the second regiment of the Gloucester

brigade, in the said warrant named, for neglect of military duty ; and, also, to send up the list of delinquents delivered to him by the brigade paymaster, upon which the said warrant was granted, together with all things touching and concerning the same, as fully and entirely as before him the same remained.

To this *certiorari* the said justice has returned in these words : " I do herewith send to the justices of the Supreme Court of Judicature the tax warrant by me issued, as within I am commanded. And I do further certify, that I put my name to the said tax warrant without seeing or having delivered to me any return list of delinquents, nor does any such list remain with me, nor have I any record or proceeding whereby I can make any more full return."

From this return it appears that there are contained in the said warrant the names of two hundred and twenty-five persons, and that the aggregate of the fines to be levied amounts to $910. This is certainly, both as to the number of persons affected, and the amount of money to be made, a matter of no small consideration ; and yet the proceeding is taken, as appears by the affidavits, upon the mere suggestion of a military officer, without any list of delinquents returned to the justice by the officer whose duty it is to make such return, without any certificate of the fines having been imposed by any competent court, without any entry made, without any paper filed, without anything of record to which the parties affected can have recourse to test the regularity of the proceeding.

It is true, that in behalf of the state they have produced the affidavit of the brigade paymaster, in which he states that he drew the warrant himself ; that upon seeing the justice passing his office, he called him in to sign it, and he did sign it ; that the list of delinquents annexed to it was made out by him, in part, before the signing, and was completed by him, afterwards, by adding a number of names thereto ; and that he took those names from returns made

State *v.* Kirby.

to him in due form of law. But though it has been made a matter of much interest to support this warrant, though much pains have been taken, and many witnesses examined, not one of these returns has been produced here.

Now, what does all this amount to ? does the affidavit of the paymaster at all better the matter ? taking the thing as he states it to be, is it, in any measure, a compliance with the law, either upon his part or on the part of the justice ? In what, is it anything more than the brigade paymaster getting the justice to sign the warrant, and then annexing to it, what, indeed, is the very essence of it, such names as delinquents, and such fines opposite to them as he might think fit; and that without any judgment or discretion of the justice exercised thereon, without any entry or other document to which recurrence can be had for redress ? Can it be, that the property of two hundred and twenty-five citizens can be made liable to seizure, and their persons to imprisonment, upon proceedings like these ? Certainly not in a free country, where rights are defined by law, where no man can be touched in his person, property, or reputation without the lawful judgment of a competent tribunal, and that recorded, or in some way registered, so that it may be carried up and reconsidered by the tribunals of the last resort. It is manifest, therefore, that this warrant was issued improvidently and without authority ; and that, therefore, it must be set aside as to all those who have come before the court as the prosecutors of this writ.

From this view of the case, Mr. Justice FORD dissented ; but, by the Chief Justice and Justice ROSSELL,

Let the warrant be set aside as to the prosecutors of this writ of *certiorari.*